Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Marc David Peters (State Bar No. 211725)
mdpeters@turnerboyd.com
Louis L. Wai (State Bar No. 295089)
wai@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (650) 521-5930
Facsimile: (650) 521-5931

Morgan Chu (State Bar No. 70446)
mchu@irell.com
Alan J. Heinrich (State Bar No. 212782)
aheinrich@irell.com
Keith A. Orso (State Bar No. 217490)
korso@irell.com
Elizabeth C. Tuan (State Bar No. 295020)
etuan@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Plaintiff Berkeley Lights, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY LIGHTS, INC., | CASE NO. 4:20-cv-5957-JSW |
| Plaintiff, | **AMENDED COMPLAINT FOR:** |
| v. | (1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT; |
| ABCELLERA BIOLOGICS INC. and LINEAGE BIOSCIENCES, INC., | |
| Defendants. | (2) UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125; AND |
| | (3) UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ. |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Berkeley Lights, Inc. ("Berkeley Lights" or "Plaintiff"), by and through its undersigned counsel, hereby sets forth its Amended Complaint against AbCellera Biologics Inc. ("AbCellera") and Lineage Biosciences, Inc. ("Lineage") (collectively "Defendants") and alleges as follows:

## NATURE OF THIS ACTION

1.      This is an action for: (1) declaratory judgment of non-infringement of a United States patent pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the United States Patent Law, 35 U.S.C. § 1 *et seq.*; (2) unfair competition and false advertising pursuant to Lanham Act § 43(a), 15 U.S.C. § 1125; and (3) unfair business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

2.      These claims arise from Defendants' false assertions that Berkeley Lights' technologies and products may infringe one or more United States patents, made in statements to both Berkeley Lights and to certain customers of Berkeley Lights.  Defendants' assertions were and are baseless and deliberately misrepresent both (1) the scope and reach of the patents and (2) Berkeley Lights' technologies and products.  Upon information and belief, Defendants' assertions were made in an improper and unlawful attempt to coerce Berkeley Lights to license patents that it does not practice or infringe, or to cease the sale of certain products, by deceiving Berkeley Lights' customers and thus improperly interfering with Berkeley Lights' business activities.

3.      When Berkeley Lights did not capitulate, defendant AbCellera filed a patent infringement action against Berkeley Lights.  In its complaint in that action AbCellera did not, however, assert all of the patents with which it had threatened both Berkeley Lights and Berkeley Lights' customers.  This omission underscores the intentional overreaching nature of Defendants' claims, and the knowing falsity of Defendants' assertions.

4.      Accordingly, Berkeley Lights seeks, *inter alia*, a declaration that its technologies and products do not infringe U.S. Patent No. 10,058,839, and injunctive relief to stop Defendants' false statements and unfair competition.

## THE PARTIES

5.      Plaintiff Berkeley Lights is a leader in Digital Cell Biology and cell selection

technology, and an innovator in processes for functionally screening and recovering individual cells for various biological processes, including antibody discovery, cell line development, T-cell analysis, and synthetic biology.

6.     Berkeley Lights is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 5858 Horton Street, Suite 320, Emeryville, California 94608.

7.     Upon information and belief, defendant AbCellera is a corporation organized and existing under the laws of the country of Canada and laws of the province of British Columbia, with its principal place of business at 2215 Yukon Street, Vancouver, British Columbia, Canada V5Y 0A1.

8.     Upon information and belief, defendant Lineage is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2215 Yukon Street, Vancouver, British Columbia, Canada V5Y 0A1.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under the Declaratory Judgment Act, Title 28 U.S.C. § 2201 and 2202, and under the patent laws of the United States, Title 28 U.S.C. §§ 1331, 1338(a) and Title 35 U.S.C. §§ 1 *et seq.*, with respect to Berkeley Lights' claims for declaratory relief.

10.     This Court has subject matter jurisdiction under the Lanham Act § 43(a), and more particularly under Title 28 U.S.C. § 1331 and 15 U.S.C. § 1125 *et. seq.*, with respect to Berkeley Lights' federal claims for unfair competition and false advertising.

11.     This Court has supplemental jurisdiction over Berkeley Lights' state law unfair competition claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a).

13.     This Court has personal jurisdiction over Defendants because Defendants transact business in the State of California, including by, upon information and belief, offering to provide

and/or providing products and services in this judicial district and throughout the State of California.

14.    Defendants have additionally directed their unlawful conduct that is the basis of this Amended Complaint into this judicial district, including by directing their false representations to Berkeley Lights in this district, and certain customers of Berkeley Lights also located in this district, and by actions outside of this district intended to harm Berkeley Lights in this judicial district.

15.    Upon information and belief, at least defendant AbCellera participated in a webinar program conducted by a Berkeley Lights customer in this judicial district to obtain information regarding Berkeley Lights' technologies and products.  Defendants then identified this presentation in making their false assertions regarding Berkeley Lights' technologies and products.

16.    In August 2018, defendant AbCellera acquired defendant Lineage.  Lineage was the applicant and is the current assignee of U.S. Patent No. 10,058,839 (the "'839 patent") at issue in this case.  Upon information and belief, Lineage has maintained offices in this judicial district (in Palo Alto, California).  Upon information and belief, two of the inventors on the '839 patent, Christian Fan and Edward Hutchins, are presently located in this District.

17.    Upon information and belief, Lineage is registered as an active corporation with the California Secretary of State.

18.    Upon information and belief, AbCellera secures, or has secured, financing from entities or individuals based in the Northern District of California, including, for example, the venture capital firms DCVC Bio and Founders Fund.

19.    Upon information and belief, AbCellera collaborates, or has collaborated, with companies in the Northern District of California, including for example Denali Therapeutics and Gilead Sciences.

20.    Upon information and belief, in 2019, AbCellera entered into a multi-year, multi-target deal with California-based Denali Therapeutics Inc., located in this judicial district (South San Francisco), to discover therapeutic antibodies for neurological diseases using AbCellera's technology.  Under the financial terms of the agreement, AbCellera will receive or has received a technology access fee and research funding and is eligible for milestone payments and royalties based on the development and commercialization of antibodies generated under this collaboration.

21.     Upon information and belief, in 2019, AbCellera entered into an agreement with California-based Gilead Sciences, located in this judicial district (Foster City), to discover therapeutic antibody candidates for infectious diseases using AbCellera's technology.  Under the agreement, AbCellera will receive or has received upfront and research payments and is eligible to receive downstream clinical and commercial milestone payments and royalties on net sales of products.

22.     Upon information and belief, in 2019, AbCellera entered into a partnership with California-based Ichor Medical Systems, Inc. to collaborate on a four-year, $30 million project.

23.     Upon information and belief, in 2020, AbCellera entered into a multi-year, multi-target strategic research collaboration and license agreement with California-based IGM Biosciences, Inc., in this judicial district (Mountain View), to discover novel IgM antibodies using AbCellera's technology.

24.     Upon information and belief, one or more of Defendants' respective employees travel to, have traveled to, and/or are located in the Northern District of California.

25.     Upon information and belief, AbCellera's CEO Carl Hansen traveled to San Francisco, California in 2020 to meet with potential business partners for AbCellera.

26.     Venue in this district is proper under 28 U.S.C. § 1391 on multiple grounds, at least including because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## DEFENDANTS' UNLAWFUL CONDUCT

27.     Beginning in October 2019, AbCellera contacted Berkeley Lights regarding Berkeley Lights' technologies and products, and regarding certain patents that AbCellera claimed to control.

28.     More specifically, AbCellera's General Counsel sent a letter to Berkeley Lights "inviting" Berkeley Lights to review AbCellera's "patent portfolio."  *See* Exhibit A.  AbCellera's correspondence lists a number of patents and also referenced "our issued U.S. patents and our pending applications which can be found using the USPTO's Public PAIR portal, some of which are presented below."  *Id.*

29.     Included in the specific patents (and published patent applications) identified in

Exhibit A are:  U.S. Patent Nos. 9,188,593 (the "'593 patent"); 10,107,812 (the "'812 patent"); 10,274,494 (the "'494 patent"); 10,087,408 (the "'408 patent"); 10,421,936 (the "'936 patent"); 9,234,240 (the "'240 patent"); 9,290,811 (the "'811 patent"); 10,196,689 (the "'689 patent"); 9,909,180 (the "'180 patent"); and U.S. Patent Application Publication No. 2019/0195874, which later issued as U.S. Patent No. 10,466,241 (the "'241 patent") (collectively, the "Threatened Patents").  *See* Exhibit A.

30.    AbCellera has also contacted certain customers of Berkeley Lights regarding the Threatened Patents and Berkeley Lights' technologies and products.  Upon information and belief, this contact began in or around December 2019, and continued at least through June 2020.

31.    Specifically, AbCellera, again through its General Counsel, has sent correspondence to at least three Berkeley Lights' customers regarding their use of Berkeley Lights' technologies and products and the Threatened Patents.  AbCellera has also discussed related issues with at least one additional customer.

32.    For example, AbCellera sent written correspondence to a Berkeley Lights' customer stating, "[i]n light of your recent announcement on the acquisition of the Berkeley Lights Beacon™ instrument for single-cell antibody discovery, we would like to draw your attention to AbCellera's patent portfolio.  Our global portfolio broadly covers the use [sic] high-throughput microfluidics for single cell antibody discovery and clone selection."  *See* Exhibit G. The letter also identified, by number, title, priority date, and earliest expiration date, all of the Threatened Patents.

33.    Upon information and belief, AbCellera has made the same or similar statements to at least two other Berkeley Lights customers, including a customer located in South San Francisco, CA ("South SF Berkeley Lights' Customer").

34.    On December 30, 2019, Berkeley Lights wrote to AbCellera to address AbCellera's letters to its customers.  Berkeley Lights advised AbCellera that its statements regarding the scope of the Threatened Patents were "highly misleading" and demanded that AbCellera "cease sending letters like these and making threatening and false statements."  *See* Exhibit B.

35.    AbCellera contacted Berkeley Lights by letter again in late January 2020.  That letter again knowingly vastly overstates the scope and reach of the patents identified in its earlier

correspondence, claiming: "our patent portfolio broadly covers methods for the use of microfluidic devices in performing single-cell secretion assays, the application of single-cell screening assays for antibody discovery, and the application of microfluidic single-cell assays for clone selection." *See* Exhibit C.

36.     AbCellera also stated in its January 2020 letter that, "[w]e must assume that Berkeley Lights is interested in ensuring that its customers have unfettered ability to purchase and use Berkeley Lights' instruments for single-cell workflows and applications that have been and are being advertised." *See* Exhibit C.

37.     Berkeley Lights again responded to AbCellera, by letter dated February 25, 2020, advising AbCellera that "we accepted your October 3, 2019 letter invitation to review AbCellera's patents and we see no freedom to operate ('FTO') issues.  In light of our FTO conclusion, we do not see a compelling reason to coordinate a business meeting." *See* Exhibit D.

38.     Still, AbCellera contacted Berkeley Lights again in April 2020.  In this correspondence, AbCellera identifies two additional patents not included in its earlier correspondence, specifically U.S. Patent No. 10,578,618 (the "'618 patent") and the '839 patent. *See* Exhibit E.  In its April 2020 letter, AbCellera also threatened, "[g]iven Berkeley Lights' widely known intentions to file an IPO, being transparent and forthright with the public, its clients, and with its stakeholders is paramount." *Id*.

39.     AbCellera also continued to contact Berkeley Lights' customers.  For example, in May 2020, AbCellera sent a second letter to a Berkeley Lights customer it had already contacted in 2019, asserting that, "our patent estate has increased considerably and additional patents will be issuing soon that expand coverage over AbCellera's proprietary technologies" and that "AbCellera's patent portfolio covers single cell antibody discovery that may be embodied in the Berkeley Lights Beacon™ instrument." *See* Exhibit H.

40.     Upon information and belief, AbCellera has made the same or similar statements to at least one other Berkeley Lights customer, specifically the South SF Berkeley' Lights Customer.

41.     Upon information and belief, the person or persons sending the above letters from AbCellera to Berkeley Lights and Berkeley Lights' customers did not have a reasonable basis to

believe that all statements and inferences to be drawn from them were true and accurate in all respects.

42.    AbCellera's correspondence to Berkeley Lights identifies, *inter alia,* the '839 patent, suggesting that patent relates to Berkeley Lights' technologies and products.  However, each of the claims of the Lineage '839 patent is directed to a method that requires "a plurality of compartments" and "merging the interior of the compartments comprising RNA with the interior of a set of compartments comprising target oligonucleotides."  None of Berkeley Lights' technologies or products use a method that comprises merging of compartments.

43.    AbCellera's correspondence to Berkeley Lights' customers also makes the false and misleading implication that Berkeley Lights' technologies and products may infringe the Threatened Patents.  Specifically, AbCellera intentionally misrepresents the nature and scope of its patent portfolio to Berkeley Lights' customers with respect to the Threatened Patents, including by representing that these are microfluidic patents that relate to Berkeley Lights' technologies and products.

44.    For example, in its letter to at least two Berkeley Lights' customers, AbCellera listed the '689, '240, '811, '180, and '593 patents as examples of its alleged "global portfolio broadly cover[ing] the use [of] high throughput microfluidics" that, by implication, Berkeley Lights' Beacon® system (recently purchased by the customer and explicitly referenced by AbCellera in the letter) allegedly infringes.  *See, e.g.,* Exhibit G.  These statements were intentionally false and objectively baseless, and were designed to mislead the Berkeley Lights customer.

45.    For example, the '689, '240, and '811 patents—which are all related and share substantially the same specification—do not even disclose, mention, or claim (i) a microfluidic system, (ii) single cell antibody discovery, or (iii) clone selection, as AbCellera represented to Berkeley Lights and its customers.  They instead disclose specific methods involving sequencing of samples containing many cells and methods for analyzing the resulting sequences. The specifications for all three patents state that "[m]ethods and compositions are provided for sequence analysis of the *immune repertoire*. . . . The invention involves obtaining nucleic acid from a biological sample and sequencing DNA or RNA relating to immunological receptor molecules.  Sequencing information

obtained from an individual sample is then compared to known sequences (e.g., in a database), to sequences from other samples, or to sequences from the same source over time." *See* Exhibit I ('689 patent) at 8:66-9:14; Exhibit J ('240 patent) at 7:66-8:14; Exhibit K ('811 patent) at 8:20-35 (emphasis added).

46.     Berkeley Lights' Beacon® system and other products are not sequencers.  Moreover, Berkeley Lights' products are not designed to support the methods claimed in the '689, '240, or '811 patents, which are directed to bulk sequencing methods and characterization of a subject's immune repertoire.  Each of the '689, '240, and '811 patents, for example, claim a "sequencing" step and "characterizing the set of immunoglobulin receptors, or fragments thereof" (in the case of the '689 patent), "characteriz[ing] the organism's immune repertoire" (in the case of the '240 patent), or "obtaining immune repertoire data for an individual" (in the case of the '811 patent).

47.     The Berkeley Lights Beacon® system does not perform sequencing, none of the workflows performed on the Beacon® system include a sequencing step, and Berkeley Lights does not direct or instruct its users to perform the specific sequencing methods claimed in the '689, '240, and '811 patents.  For example, Berkeley Lights' website describes the Beacon® system as "a combination of optics and nanofluidics called optofluidics."  *See* Exhibit L (Berkeley Lights' Website).  The website also describes four modules used to build single-cell workflows on the Beacon® system, specifically "Import, Culture, Assay and Export," and includes accompanying videos.  *Id*.  None of these modules involve sequencing.

48.     During the "Import" module, Berkeley Lights' "software automatically identifies single cells and directs them into NanoPen™ chambers all at once."  *Id*.  During the "Culture" module, "nutrients diffuse in, waste diffuses out, and software images the chip continuously to count cells and calculate growth rate."  *Id*.  The "Culture" module may be followed or preceded by the "Assay" module, during which a scientist using the Beacon® system can "[t]est individual cells immediately and repeatedly in [the Beacon's] NanoPen chambers, instead of culturing for weeks to reach a minimum number of cells for assay."  *Id*.  Finally, the "Export" module allows users to "[c]hoose [their] cells of interest.  Light patterns move them into position for export to a well plate."  *Id*.  The two assays that the Berkeley Lights website lists as examples for the "Assay" workflow

module include an antigen-specific bead assay and a multiplex IgG capture assay, neither of which involve sequencing or characterization of the immune repertoire. *Id.* None of the workflow modules involve any sequencing step, much less the specific sequencing methods claimed in the '689, '240, or '811 patents.

49.     Given the publicly available information on the Berkeley Lights Beacon® system, including but not limited to the information summarized herein, AbCellera had no objectively reasonable basis to believe otherwise.

50.     In sum, Berkeley Lights does not direct its customers to perform the methods claimed in the '689, '240, or '811 patents, and nothing on its website or in its marketing materials suggests otherwise. Thus, prior to (and after) sending the letters listing the '689, '240, and '811 patents to BLI's customers, AbCellera had no objectively reasonable basis to believe that Berkeley Lights instructs its customers to use third party sequencers or perform bulk sequence analysis in the manner claimed by the patents.

51.     As another example, AbCellera included the '180 patent in its letters to Berkeley Lights' customers. Like the '689, '240, and '811 patents, the '180 patent also does not even mention or disclose a microfluidic system, and instead is directed to specific methods involving sequencing. For example, the abstract of the '180 patent recites that "[h]igh-throughput long read sequencing is used to perform *immunogenomic characterization of expressed antibody repertoires* in the context of vaccination." Exhibit M ('180 patent) at Abstract (emphasis added). Each of the claims of the '180 patent recites a "sequencing" step, and further recites "performing a linkage analysis of the CDR3 nucleic acid sequences to establish linked CDR3 sequences, wherein two CDR3 sequences are in a linkage if they have the same V and J assignment and no more than one amino acid difference in the CDR3 region"; "grouping CDR3 sequences into a plurality of lineages, wherein individual lineages of the plurality comprise (i) identical CDR3 sequences and (ii) CDR3 sequences that are associated with one another through one or more linkages"; and "comparing the CDR3 sequences in the plurality of lineages with a CDR3 sequence of an antigen-specific antibody obtained from the subject to determine the presence of the antigen-specific antibody lineage." None of the Berkeley Lights Beacon® system workflow modules involve a sequencing step, much less the specific

sequencing methods claimed in the '180 patent.  Given the publicly available information on the Berkeley Lights Beacon® system, including but not limited to the information summarized herein, AbCellera had no objectively reasonable basis to believe otherwise.

52.     AbCellera also identified the '593 patent in its letters to Berkeley Lights' customers. That patent claims specific methods of testing for binding interactions between a protein and a biomolecule.  *See* Exhibit N ('593 patent) at Abstract ("There are provided methods and devices for assaying for a binding interaction between a protein, such as a monoclonal antibody, produced by a cell, and a biomolecule.").  Claim 1 of the '593 patent, for example, requires "determining a binding kinetic measurement between the protein secreted by the cell and the biomolecule."  Independent claim 26 similarly claims "determining the antigen-antibody binding kinetics of the antibodies produced by the APB with the antigen," and independent claim 33 requires "determining a binding kinetic measurement between the protein secreted by the cell and the biomolecule."  Berkeley Lights does use the Beacon® system to determine the binding kinetics between proteins and biomolecules, and neither does it direct its customers to do so.  Nothing on Berkeley Lights' website or its marketing materials suggests that the Beacon® system may be used to perform the methods of the claims of the '593 patent.

53.     In light of this clear evidence, AbCellera knew or should have known that Berkeley Lights' Beacon® system and other products do not relate to the '689, '240, '811, '180, or '593 patents.  AbCellera's assertions to Berkeley Lights' customers were objectively baseless.

54.     Upon information and belief, AbCellera's false and misleading claims in letters to Berkeley Lights' customers were designed to deceive Berkeley Lights' customers into refraining from purchasing and using Berkeley Lights' products and otherwise continuing to do business with Berkeley Lights.  By improperly and unlawfully interfering with Berkeley Lights' customer relations in this manner, AbCellera unfairly obstructs competition from Berkeley Lights' products in the marketplace to AbCellera's advantage.  Moreover, AbCellera's false and misleading claims in its letters to Berkeley Lights and its customers constitute an improper and unlawful attempt to either pressure Berkeley Lights to negotiate an unnecessary license to the Threatened Patents, or to cause Berkeley Lights to cease the sale of certain product offerings to the detriment of its customers.

55.     Upon information and belief, defendant Lineage directly participated in drafting and/or sending at least AbCellera's letter to Berkeley Lights.  For example, AbCellera's April 2020 letter to Berkeley Lights was delivered by Federal Express, in an envelope that lists Lineage as the sender.  *See* Exhibit F.

56.     On July 9, 2020, August 25, 2020, and September 16, 2020, AbCellera filed complaints alleging that Berkeley Lights infringes certain of its patents, including the '812 patent, the '494 patent, the '241 patent, the '618 patent, the '962 patent, the '408 patent, the '936 patent, and the '018 patents.  Notably, however, AbCellera did not include in its complaints half of the patents identified in its correspondence to Berkeley Lights and Berkeley Lights' customers, including specifically Lineage's '839 patent, as well as the  '689, '240, '811, '180, and '593 patents.

## <u>COUNT I</u>
## <u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT</u>

57.     Plaintiff Berkeley Lights incorporates by reference the allegations set forth above as though fully set forth herein.

58.     Berkeley Lights does not directly, contributorily, or by inducement infringe any claim of the '839 patent, either literally or under the doctrine of equivalents.

59.     Berkeley Lights' customers do not, through their use of Berkeley Lights' technologies or products, infringe any claim of the '839 patent, either literally or under the doctrine of equivalents.  For example, each of the claims of the '839 patent is directed to a method that requires "a plurality of compartments" and "merging the interior of the compartments comprising RNA with the interior of a set of compartments comprising target oligonucleotides."  None of Berkeley Lights' technologies or products use a method that comprises merging of compartments.

60.     Based on the acts, conduct, and statements of Defendants, there exists an actual and substantial controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Berkeley Lights and the Defendants as to whether Berkeley Lights or any of the products made, used, sold and/or offered for sale by Berkeley Lights infringes the '839 patent.

61.     Specifically, Defendants' acts giving rise to a case or controversy include:

(a)     AbCellera and Lineage sending multiple letters to Berkeley Lights and Berkeley

Lights' customers regarding AbCellera's "patent portfolio;"

(b) AbCellera and Lineage sending Berkeley Lights a letter identifying specifically the '839 patent, among other patents;

(c) AbCellera and Lineage's principal approaching a Berkeley Lights employee at an industry conference regarding AbCellera's patent portfolio and discussing Berkeley Lights' freedom to operate in view of that portfolio with that employee;

(d) AbCellera filing multiple complaints in the District of Delaware against Berkeley Lights, including on other patents identified in its correspondence to Berkeley Lights and Berkeley Lights' customers.

62.     The existing controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

63.     Upon information and belief, absent a declaration of non-infringement, the Defendants will continue to wrongfully assert the '839 patent against Berkeley Lights and possibly others, including Berkeley Lights' customers, in violation of the laws and contrary to the public policy of the United States, and the Defendants will, thereby, continue to cause Berkeley Lights irreparable injury and damage.

64.     A judicial determination on these disputes is necessary and appropriate at this time so that the parties may ascertain their respective rights and obligations with respect to the '839 patent and any past, present or future manufacture, use, importation, distribution, sale or offer for sale of Berkeley Lights' products.

## COUNT II

## UNFAIR COMPETITION UNDER LANHAM ACT § 43(A), 15 U.S.C. § 1125

65.     Plaintiff Berkeley Lights incorporates by reference the allegations set forth above as though fully set forth herein.

66.     AbCellera has made false statements of fact about the Threatened Patents and about Berkeley Lights' technologies and products, including false statements to Berkeley Lights' customers.  For example, AbCellera has made false and misleading statements about the '689, '240, '811, '180, and '593 patents and about Berkeley Lights' technologies and products in commercial

speech to both Berkeley Lights and its customers.

67.     Specifically, AbCellera has made false statements in commercial speech to Berkeley Lights and its customers regarding the scope of at least the '689, '240, '811, '180, and '593 patents, improperly misrepresenting their scope and reach as they relate to Berkeley Lights' technologies and products.  As described above, AbCellera's statements to Berkeley Lights' customers regarding the '689, '240, '811, '180, and '593 patents were objectively baseless such that no reasonable litigant could expect success on the merits.  For instance, the '689, '240, '811, and '180 patents claim specific methods involving sequencing.  The Berkeley Lights Beacon® system, the Berkeley Lights product referenced in AbCellera's letters to customers, is not a sequencer, and Berkeley Lights does not direct its customers to use the Beacon® system to perform the methods claimed by the '689, '240, '811, or '180 patents.  As another example, the '593 patent requires determination of binding kinetics between a protein and a biomolecule.  As described above, neither Berkeley Lights nor its customers use the Berkeley Lights Beacon® system to do so.

68.     Upon information and belief, AbCellera's baseless letters concealed an attempt to interfere directly with the business relationships of a competitor, Berkeley Lights.

69.     AbCellera's statements were false and misleading representations of a material fact that constituted commercial advertising and promotion.

70.     AbCellera's statements misrepresented the nature, qualities, and/or characteristics of the Threatened Patents and/or Berkeley Lights' technologies and products.

71.     AbCellera's statements actually deceived and/or had the tendency to deceive a substantial segment of the intended audience.

72.     AbCellera caused its statements to enter interstate commerce, including by transmitting them from Vancouver, British Columbia, Canada into various states in the United States, including at least California, Massachusetts, and Indiana.

73.     AbCellera's false statements were made in bad faith as they were intended to interfere with Berkeley Lights' economic relationships, and because AbCellera knew or should have known that the '689, '240, '811, '180, and '593 patents do not cover Berkeley Lights' technologies and products.

74.     AbCellera's false statements have caused or are likely to cause competitive or commercial injury to Berkeley Lights.

75.     AbCellera's conduct, as described above, was and continues to be so willful, deliberate, wanton, and in such reckless and conscious disregard of the rights of Berkeley Lights and others as to make this an "exceptional" case under 15 U.S.C. § 1117.

## COUNT III

## UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.

76.     Plaintiff Berkeley Lights incorporates by reference the allegations set forth above as though fully set forth herein.

77.     AbCellera has committed and will continue to commit unlawful, unfair or fraudulent business acts or practices, and unfair, deceptive, untrue or misleading advertising in violation of California Business & Professions Code §§ 17200, *et seq*.

78.     For example, AbCellera has made false and misleading statements about the '689, '240, '811, '180, and '593 patents and about Berkeley Lights' technologies and products in commercial speech to both Berkeley Lights and its customers.

79.     Specifically, AbCellera has made false statements in commercial speech to Berkeley Lights and its customers regarding the scope of at least the '689, '240, '811, '180, and '593 patents, improperly misrepresenting their scope and reach as they relate to Berkeley Lights' technologies and products.  For instance, AbCellera's claims regarding the scope and nature of these patents are objectively baseless because the '689, '240, '811, and '180 patents claim methods involving sequencing.  As described above, the Berkeley Lights Beacon® system, the Berkeley Lights product referenced in AbCellera's letters to customers, is not a sequencer.  As another example, the '593 patent requires determination of binding kinetics between a protein and a biomolecule.  As described above, neither Berkeley Lights nor its customers use the Berkeley Lights Beacon® system to do so.

80.     AbCellera knew or should have known that its claims were baseless based on the information available on Berkeley Lights' website and in marketing materials, as described above. In addition, upon information and belief, AbCellera's failure to bring suit on at least the '689, '240, '811, '180, and '593 patents demonstrates that AbCellera was aware of the untenable nature of its

claims that these patents were infringed by Berkeley Lights' products, and in particular, Berkeley

Lights' Beacon® system.

81.     Upon information and belief, AbCellera's unsubstantiated representations were

alleged in bad faith in order to deceive Berkeley Lights' customers and prevent them from

purchasing and using Berkeley Lights' products.  This unfair and improper interference with

Berkeley Lights' business relationships and resulting frustration of competition from Berkeley

Lights prevents Berkeley Lights from marketing a lawfully competitive product to the fullest extent

possible, thereby wrongfully stifling competition in the marketplace to AbCellera's advantage.

82.     This cause of action expressly excludes as a basis for liability AbCellera's litigation

activities and non-commercial speech.

83.     As a result of AbCellera's wrongful acts, Berkeley Lights has suffered damages,

including diminution in the value of its business, and damage to its reputation and goodwill.

84.     Upon information and belief, AbCellera's conduct was fraudulent, oppressive and/or

malicious, giving rise to an award of punitive damages.

85.     Unless AbCellera is restrained from continuing its unfair, unlawful, fraudulent, and/or

misleading practices, Berkeley Lights will suffer irreparable injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgement as follows:

86.     That judgment be entered in favor of Plaintiff Berkeley Lights and against the

Defendants;

87.     That the Court declare that Berkeley Lights' case against the Defendants is an

exceptional case under 35 U.S.C. § 285;

88.     That, on the First Count, the Court makes a declaration that Berkeley Lights does not

infringe, directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any

claim of the '839 patent;

89.     That, on the Second Count, Berkeley Lights be awarded damages, multiplied for the

Defendants' willful misconduct, and injunctive relief baring further violations of the Lanham Act as

alleged herein;

90.     That, on the Third Count, Berkeley Lights be awarded damages, punitive damages, and injunctive relief barring further unfair competition as alleged herein;

91.     That Berkeley Lights be awarded pre-judgment and post-judgment interest at the applicable legal rate;

92.     That Berkeley Lights be awarded costs, expenses, and attorneys' fees, as appropriate; and

93.     That the Court award Berkeley Lights such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all claims for which it has the right thereto.

Dated: October 13, 2020                    Respectfully submitted,

                                           TURNER BOYD LLP

                                           */s/ Keeley I. Vega*

                                           Karen I. Boyd (State Bar No. 189808)
                                           boyd@turnerboyd.com
                                           Jennifer Seraphine (State Bar No. 245463)
                                           seraphine@turnerboyd.com
                                           Keeley I. Vega (State Bar No. 259928)
                                           vega@turnerboyd.com
                                           Marc David Peters (State Bar No. 211725)
                                           mdpeters@turnerboyd.com
                                           Louis L. Wai (State Bar No. 295089)
                                           wai@turnerboyd.com
                                           TURNER BOYD LLP
                                           702 Marshall Street, Suite 640
                                           Redwood City, California 9063
                                           Telephone: (650) 521-5930

                                           Morgan Chu (State Bar No. 70446)
                                           mchu@irell.com
                                           Alan J. Heinrich (State Bar No. 212782)
                                           aheinrich@irell.com
                                           Keith A. Orso (State Bar No. 217490)
                                           korso@irell.com
                                           Elizabeth C. Tuan (State Bar No. 295020)
                                           etuan@irell.com
                                           IRELL & MANELLA LLP

1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010

*Attorneys for Plaintiff*