UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKELEY LIGHTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ABCELLERA BIOLOGICS INC., et al., <br><br> Defendants. | Case No. 20-cv-05957-JSW <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br> Re: Dkt. No. 26 |

Now before the Court is AbCellera Biologics Inc.'s ("AbCellera") and Lineage Biosciences, Inc.'s ("Lineage") motion to dismiss Berkeley Lights, Inc's ("Berkeley Lights") Amended Complaint ("AC"). The Court finds this motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Having carefully reviewed the parties' papers, considered their arguments, and analyzed the relevant legal authority, the Court GRANTS the motion.

## BACKGROUND

Berkeley Lights is a corporation specializing in Digital Cell Biology and cell selection technology and is an innovator in processes for functionally screening and recovering individual cells for antibody discovery. (AC ¶ 5.) Berkeley Lights is incorporated in Delaware and headquartered in California. (*Id.* ¶ 6.) AbCellera is a corporation also specializing in antibody discovery. (*Id.*, Ex. A.) AbCellera is incorporated and headquartered in Vancouver, British Columbia, Canada. (*Id.* ¶ 7.) AbCellera acquired Lineage in 2018. (*Id.* ¶ 16; Declaration of Tryn Stimart ("Stimart Decl.") ¶ 2.) Lineage is a Delaware corporation headquartered in Vancouver, British Columbia, Canada. (AC ¶ 8.)

AbCellera sent a letter to Berkeley Lights inviting the latter to review the former's patent portfolio and welcoming further discussions about the patents. (*Id.* ¶ 28, Ex. A.) The letter was

signed by AbCellera's General Counsel and placed on AbCellera's letterhead. (*See id.*, Ex. A.) Included in the letter was a list of some of AbCellera's patents: U.S. Patent Nos. 9,188,593 ("the '593 patent"), 10,107,812 ("the '812 patent"), 10,274,494 ("the '494 patent"), US20190195874 A1 ("the A1 patent"), 10,087,408 ("the '408 patent"), 10,421,936 ("the '936 patent"), 9,234,240 ("the '240 patent"), 9,290,811 ("the '811 patent"), 10,196,689 ("the '689 patent"), and 9,909,180 ("the '180 patent"). (*Id.*, Ex. A.) Stanford University ("Stanford") is listed as the assignee of the '689 patent, the '240 patent, the '811 patent, the '180 patent. (*Id.*, Exs. I-K, M.) AbCellera sent similar letters to at least three unidentified Berkeley Lights customers inviting them to review their patent portfolio after they had announced they acquired Berkeley Lights Beacon™ instrument for single-cell antibody discovery. (*Id.* ¶¶ 32-33, Ex. G.) Only one of the customers is located in California. (*Id.* ¶ 33.)

Two months later, Berkeley Lights wrote back to AbCellera to address the letters sent to its customers. (*Id.* ¶ 34.) In its letter, Berkeley Lights asserted that AbCellera's description of the scope of their patents were "highly misleading" and demanded that it cease sending such letters to its customers. (*Id.*, Ex. B.) Over the next two months, the parties exchanged two more letters, the last of which Berkeley Lights declared it believed there was no freedom to operate issues. (*Id.* ¶¶ 36-37, Exs. C, D.) In its final response to Berkeley Lights, AbCellera reiterated that it owned broad patents related to antibody discovery and clone selection, again listing the same patents in its initial letter. (*Id.* ¶ 38, Ex. E.) This time, however, it included two additional patents, the relevant one here being U.S. Patent No. 10,058,839 ("the '839 patent"). (*Id.*) Despite Berkeley Lights' demand to cease sending letters to its customers, AbCellera sent a second letter to unidentified customers, including the California customer. (*Id.* ¶¶ 39-40.) Berkeley Lights alleges Lineage participated in drafting and sending AbCellera's letters because Lineage was listed as the sender on one single envelope. (*Id.* ¶ 55, Ex. F.) Lineage's name did not appear in the letters themselves, Lineage's General Counsel was neither mentioned nor signed any of the letters, and none of Berkeley Lights' letters were addressed to Lineage. (*See id.*, Exs. A-E.)

Berkeley Lights also alleges that AbCellera engaged in numerous activities in California apart from just sending the letters. It alleges AbCellera secured financing from entities in

United States District Court
Northern District of California

California. (*Id.* ¶ 18.) The intended use of the financing was not alleged in the AC. (*See id.*) Additionally, Berkeley Lights claims AbCellera entered business deals with four California companies. (*See id.* ¶¶ 18-23.) The first is Denali Therapeutics Inc. (*Id.* ¶ 20.) AbCellera and Denali Therapeutics Inc. agreed "to discover therapeutic antibodies for neurological diseases using AbCellera's technology." (*Id.*) They further agreed that "AbCellera will receive or has received a technology access fee and research funding and is eligible for milestone payments and royalties based on the development and commercialization of antibodies generated under this collaboration." (*Id.*) Next is AbCellera's business arrangement with Gilead Sciences. (*Id.* ¶ 21.) They also agreed "to discover therapeutic antibody candidates for infectious diseases using AbCellera's technology." (*Id.* ¶ 21.) In return, "AbCellera will receive or has received upfront and research payments and is eligible to receive downstream clinical and commercial milestone payments and royalties on net sales of products." (*Id.*) Third is AbCellera's partnership with Ichor Medical Systems, Inc. "to collaborate on a four-year, $30 million project." (*Id.* ¶ 22.) Finally, there is AbCellera's deal with IGM Biosciences, Inc. (*Id.* ¶ 23.) They "entered into a multi-year, multi-target strategic research collaboration and license agreement . . . to discover novel IgM antibodies using AbCellera's technology." (*Id.*)

AbCellera employees have also traveled to California for an unknown number of times, and its Chief Executive Officer traveled to San Francisco, California in 2020 for a business meeting. (*Id.* ¶¶ 24-25.) AbCellera also participated in a webinar conducted by one of Berkeley Lights' California customer. (*Id.* ¶ 15.)

Berkeley Lights sues AbCellera and Lineage for declaratory judgment, claiming its technology does not infringe the '839 patent. Berkeley Lights also sues for unfair competition under the Lanham Act and the California Unfair Competition Law, alleging AbCellera's statements in its letters were false and misleading and were intended to deceive its customers from purchasing Berkeley Lights' products or otherwise halt doing business with them.

AbCellera and Lineage now moves to dismiss the entire AC for several reasons, including for lack of personal jurisdiction. Because the Court finds the issue of personal jurisdiction dispositive, the remaining grounds for dismissal need not be addressed.

# ANALYSIS

**A.   LEGAL STANDARD**

Federal Circuit law governs the Court's analysis because all of Berkeley Lights' claims are intimately related to patent law. *See Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). The Court has personal jurisdiction over AbCellera and Lineage if California's "long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (citing *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017)). Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent under the United States Constitution, *see* Cal. Civ. Proc. Code § 410.10, the Court's remaining inquiry is whether jurisdiction comports with due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

Due process requires AbCellera and Lineage to have "minimum contacts" with California "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Court has specific jurisdiction over AbCellera and Lineage if: (1) they purposefully directed their activities at California; (2) Berkeley Lights' claims arise out of or relates to their activities with California; and (3) assertion of personal jurisdiction is reasonable and fair. *New World*, 859 F.3d at 1037. Berkeley Lights carries the burden of proving the first two factors, which relate to the minimum contacts part of the analysis. *Inamed*, 249 F.3d at 1360. Each of AbCellera's and Lineage's contacts with California "must be assessed individually[.]" *Avocent*, 552 F.3d at 1329 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Once Berkeley Lights has met the first two factors, the burden shifts to AbCellera and Lineage to prove exercising personal jurisdiction would not be reasonable and fair. *Inamed*, 249 F.3d at 1360.

General jurisdiction is different. The Court may exercise general jurisdiction over AbCellera and Lineage "'to hear any and all claims against them when their affiliations with [California] are so "continuous and systematic" as to render them essentially at home in [California].'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires*

4

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporate defendant is considered at home at its place of incorporation and its principal place of business. *Id.* at 137. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19)). Because "[n]either the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic,'" the Court "must look at the facts of each case to make such a determination." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Since the Court is assessing this motion based on a written record and without an evidentiary hearing, Berkeley Lights needs to only make a prima facie case showing that AbCellera and Lineage are subject to personal jurisdiction. *Avocent*, 552 F.3d at 1328-29. The allegations are construed in Berkeley Lights' favor. *Id.* at 3292.

**B.    THE COURT LACKS PERSONAL JURISDICTION OVER ABCELLERA BIOLOGICS, INC.**

AbCellera moves to dismiss the entire AC, arguing that the Court lacks both specific and general jurisdiction over it. The Court will first address the issue of specific jurisdiction, then general jurisdiction.

**1.    Specific Jurisdiction**

**a.    Purposeful direction**

Berkeley Lights argues that AbCellera purposefully directed its activities at California when it sent letters to it and its customers. A defendant purposefully directs activities at the forum when the defendant's "contacts proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Avocent*, 552 F.3d at 1329 (quoting *Burger King*, 471 U.S. at 475)).

5

It is undisputed that AbCellera sent letters to Berkeley Lights and to at least one of its California customers. A fair reading of these letters shows that AbCellera either intended for Berkeley Lights to stop using technology AbCellera believed infringed on its patents, or alternatively, grant licenses for their usage. Thus, those letters sent to Berkeley Lights and its California customer were purposefully directed at California.

Before moving on, the Court finds it important to address AbCellera's remaining contacts in California—contacts Berkeley Lights neglected to address in its discussion of this factor and the second factor—seeing as each "must be assessed individually[.]" *Avocent*, 552 F.3d at 1329 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Those activities include AbCellera's: (1) letters sent to unidentified, non-California customers; (2) business dealings with four California companies; (3) acquisition of financing; (4) employee travel and CEO's travel to California; (5) and participation in an online webinar. The Court finds all these activities, except for the letters sent to unidentified, non-California customers, were purposefully directed at California.

Additionally, in its discussion of the third factor, Berkeley Lights also suggests AbCellera and Stanford entered a contract because the latter is listed as the assignee of some of AbCellera's patents. (*See* Opp. at 2.) From that, Berkeley Lights further assumes that this purported contract "clearly allows for [AbCellera] to enforce the patents at issue." (Opp. at 5-6.) However, nowhere in the AC does Berkeley Lights make such a straightforward allegation, nor has it offered any evidence to show the existence of such a contract. To get to Berkeley Lights' conclusion requires the Court to make attenuated inferences about the existence of a contract between them, and then to further assume that from that contract—the terms of which are not outlined here—AbCellera retains the right to enforce the '839 patent. Without more, the Court cannot conclude AbCellera had this contact with Stanford, let alone had purposefully directed it at California.[1]

---

[1] Even assuming this contract existed, Berkeley Lights' reliance on it fails for an additional reason. Berkeley Light's declaratory action is for non-infringement of the '839 patent. The patents Stanford is listed as the assignee are the '689 patent, the '240 patent, the '811 patent, and the '180 patent. Because its declaratory action involves a wholly different patent, the claim does not arise out of or relate to the Stanford patents.

### b. Relatedness

Having concluded that most of AbCellera's activities were purposefully directed at Berkeley Lights and a California customer, the Court moves on to the related point of whether Berkeley Lights' declaratory action for non-infringement of the '839 patent and unfair competition claims arise out of or are related to these activities.

The Court first addresses Berkeley Lights' declaratory action. The purpose of its declaratory action for non-infringement is to "to clear the air of infringement charges." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998). Such a claim thus arises out of or relates to AbCellera's "contacts with the forum state only if those contacts 'relate in some material way *to the enforcement or the defense of the patent.*'" *Maxchief Invs. Ltd v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018) (emphasis added) (quoting *Avocent*, 552 F.3d at 1336)). Thus, this prong requires "some enforcement activity in the forum state by [AbCellera]." *Id.* (citing *Avocent*, 552 F.3d at 1336)).

Here, Berkeley Lights' declaratory action arises out of and relates to AbCellera's infringement letters. In its letters to Berkeley Lights and its California customer, AbCellera invited them to review its patent portfolio and welcomed further discussions regarding the scope of its patents and any potential licensing options. Most relevant here was AbCellera's mention of the '839 patent in the last letter to Berkeley Lights. Because Berkeley Lights' declaratory action seeks to "to clear the air of infringement charges" regarding AbCellera's '839 patent, this claim undoubtedly arises out of and relates to AbCellera's letters. *Red Wing Shoe*, 148 F.3d at 1360. Moreover, while AbCellera's carefully worded letter avoided any express accusations of patent infringement or threats of litigation, such craftsmanship does not distract from the central purpose of the letter—that is, to have Berkeley Lights and its customer cease using infringing technology or acquire the appropriate licenses. Berkeley Lights' declaratory action "'cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' or 'infringement.'" *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2011)).

It is less clear though how Berkeley Lights' declaratory actions arises out of or relates to

7

AbCellera's business deals with the four California companies. The Federal Circuit has held that "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unforceability." *Avocent*, 552 F.3d at 1336. In these agreements, AbCellera agreed to collaborate with these companies for a variety of reasons unrelated to the enforcement or defense of its patents.

For example, AbCellera is collaborating with Denali Therapeutics Inc. "to discover therapeutic antibodies for neurological diseases using AbCellera's technology. (AC ¶ 20.) As a result of their agreement, AbCellera will receive a "technology access fee," "research funding," and is "eligible for milestone payments on royalties based on the development and commercialization of antibodies generated under this collaboration." (*Id.*). AbCellera struck deals with similar terms with Gilead Sciences, Ichor Medical Systems, Inc., and IGM Biosciences, Inc. (*See id.* ¶¶ 21-23.) AbCellera's deals with these companies show nothing more than the commercialization of its products. The Federal Circuit has made clear though "that only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) (citing *Avocent*, 552 F.3d at 1336)). Additionally, the AC fails to allege, and Berkley Lights does not explain, whether those specific business arrangements even contemplated the patent at issue—the '839 patent. Thus, Berkeley Lights' declaratory action does not arise out of or relate to AbCellera's business dealings.

The Court also concludes Berkeley Lights' declaratory action does not arise out of or relate to AbCellera's acquisition of financing, its employee travel to California, and its participation in a single online webinar. Berkeley Lights fails to allege or provide any additional support showing that the purpose of any of these activities was for the "enforcement or defense efforts related to the ['839 patent] rather than [AbCellera's] commercialization efforts[.]" *Autogenomics, Inc.*, 566 F.3d at 1020.

1    Turning now to the unfair competition claims, Berkeley Lights premises these claims on
2    the allegations that AbCellera made false, misleading, and objectively baseless statements in its
3    letters regarding the scope of its patents. In doing so, Berkeley Lights alleges that AbCellera
4    intended to deceive the former's customers into believing a patent was required to use its products
5    or cease using its products. Because the question of whether AbCellera's letters were unfair hinges
6    on the veracity of AbCellera's infringement claims, *see Breckenridge Pharm., Inc. v. Metabolite*
7    *Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006), the Court concludes these claims arise out of
8    and relate to the contents of the letters. The Court also notes that these claims do not arise out of or
9    relate to, and Berkeley Lights does not argue, to AbCellera's other contacts with California.
10   In sum, Berkeley Lights' declaratory action and unfair competition claims arise out of and
11   relate to only AbCellera's letters.

### c. Reasonable and fair

Now that it has been established that AbCellera has minimum contacts with California, the burden shifts to AbCellera to persuade the Court that the exercise of personal jurisdiction would not be reasonable and fair.

First, the Court will turn to Berkeley Lights' declaratory action. AbCellera argues that sending infringement letters is insufficient to confer specific jurisdiction. The Court agrees. The Federal Circuit has repeatedly held "that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." *Inamed*, 249 F.3d at 1361 (collecting cases). While an infringement letter may be enough to meet the minimum contacts requirement of personal jurisdiction, as is true here, infringement letters by themselves do not suffice to create personal jurisdiction because of policy considerations unique to the patent context. *See Avocent*, 552 F.3d at 1333. "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe*, 148 F.3d at 1360-61. Thus, to comport with

9

fair play and substantial justice, AbCellera must "have engaged in 'other activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334 (emphasis in original).

Berkeley Lights argues that AbCellera engaged in other activities that arise from its business and contractual relationships with California. Specifically, Berkeley Lights points to their business dealings with the four California corporations, its acquisition of financing, and licensing of the Stanford patents in this district. For the same reasons discussed earlier, the Court finds that Berkley Lights' reliance on these other activities unavailing because it has not shown these activities relate to patent enforcement, let alone, enforcement of the '839 patent. The Court thus concludes that AbCellera has carried its burden in showing that exercising specific jurisdiction over it regarding Berkeley Lights' declaratory action would not comport with traditional notions of fair play and substantial justice.

Now on to Berkeley Lights' unfair competition claims. Here, "the question of infringement is a critical factor in determining liability under the non-patent claims. . . . [AbCellera's] letters would neither be *unjustifiable* nor *unfair* if the implication of infringement contained therein is true." *Avocent*, 552 F.3d at 1340 (emphasis in original) (quoting *Breckenridge,* 444 F.3d at 1362)). Because these claims are intimately linked to patent law, the Federal Circuit's law regarding due process applies equally here. *Id.* Thus, "a patent owner may, without more, send [infringement] letters to a suspected infringer, *or its customers*, without being subjected to personal jurisdiction in the suspected infringer's home state." *Id.* (emphasis in original). Because Berkeley Lights relies on solely AbCellera's letters, these letters alone do not subject AbCellera to personal jurisdiction in California. *See also id.* (dismissing unfair competition claims based on sending infringement letters for lack of personal jurisdiction); *Jacobsen v. Katzer*, No. C 06-01905 JSW, 2006 WL 3000473, at *5 (N.D. Cal. Oct. 20, 2006) (dismissing non-patent claims based on an attorney sending infringement letters and a FOIA request to the plaintiff)).

\* \* \*

Accordingly, for all the above reasons, the Court concludes it cannot exercise specific jurisdiction over AbCellera for either Berkeley Lights' declaratory action and unfair competition

claims.

### 2. The Court Lacks General Jurisdiction Over AbCellera.

AbCellera also argues the Court lacks general jurisdiction over it because it is neither incorporated nor headquartered in California, and because its contacts are insufficient to render it at home in California. In a one-sentence response, Berkeley Lights argues the facts discussed in its argument of specific jurisdiction "also support general jurisdiction." (Opp. at 6.)

The Court agrees with AbCellera that its contacts with California do not justify exercising general jurisdiction over it. AbCellera is incorporated and headquartered in Vancouver, British Columbia, Canada. Thus, it is not at home in California in the traditional sense. The remaining inquiry now is whether AbCellera's contacts with California are "'so substantial and of such a nature as to render [it] at home in [California.]'" *BNSF*, 137 S. Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19)).

While there is no specific test for analyzing whether AbCellera's contacts are "continuous and systematic," this analysis is a fact intensive inquiry into the facts of each case to determine whether the exercise of general jurisdiction is appropriate. *LSI Indus.*, 232 F.3d at 1376. The Supreme Court's precedent shows that merely having some business contacts in the forum state will unlikely justify a court exercising general jurisdiction over a non-resident defendant. *See BNSF*, 137 S. Ct. at 1549; *Daimler*, 571 U.S. at 139; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). The Supreme Court in *BNSF*, for example, held the defendant activities did not render it essentially at home in Montana, even though it operated 2,061 miles of railroad in Montana, employed about 2,100 workers there, generated 10% of its total revenue in Montana, and maintained one automotive facility there. *BNSF*, 137 S. Ct. at 1554; *see also Daimler*, 571 U.S. at 139 (holding the multiple California-based facilities owned by the defendant's indirect subsidiary insufficient to establish general jurisdiction); *Helicopteros*, 466 at 415-19 (holding the CEO's travel for a business meeting, acceptance of funds, sending employees for training, and making purchases in Texas insufficient to establish general jurisdiction).

In only one case has the Supreme Court held it proper for a court to exercise general jurisdiction over a non-resident defendant. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S.

437 (1952). In *Perkins*, the plaintiff sued a Philippine mining company. *Id.* at 438-39. During the Japanese occupation of the Philippines, the defendant company's president, who was also the general manager and principal stockholder, temporarily relocated to Ohio. *Id.* at 447. While in Ohio, he maintained an office where he conducted business and stored company files. *Id.* at 447-48. He signed and distributed checks from Ohio. *Id.* at 448. He also maintained two bank accounts in Ohio containing a substantial amount of the company's funds. *Id.* Several directors' meetings were held in Ohio. *Id.* And finally, he supervised the rehabilitation efforts of companies' properties in the Philippines. *Id.* Because the defendant essentially operated the company's business from Ohio, even though temporarily, the Supreme Court held these activities so "continuous and systematic" to justify exercising general jurisdiction over the defendant. *Id.* at 448-49.

Here, AbCellera's activities hardly compare to the defendant's continuous and systematic business activities in *Perkins*. Nothing in the AC supports a finding that AbCellera's business activities in California have any meaningful impact on its overall and daily business operations that would render AbCellera at home in California. The Court does not even believe the facts here rise to the level of contacts in *BNSF* because AbCellera does not have any physical infrastructure or employees in California seeing as all its activities here are purely intangible.

Accordingly, the Court concludes it cannot exercise general jurisdiction over AbCellera.

C. **THE COURT LACKS PERSONAL JURISDICTION OVER LINEAGE BIOSCIENCES, INC.**

Lineage also argues the Court cannot exercise personal jurisdiction over it. The Court agrees. Turning first to specific jurisdiction, Lineage has far less, if any, contacts with California. Lineage does not maintain any offices in California. (Stimart Decl. ¶ 3.) The only remaining purported contact with California is the letters sent to Berkeley Lights and its customers. Berkeley Lights specifically points to Lineage's name listed as the sender on one of the envelopes. The letters themselves, however, were written on AbCellera letterhead and were authored by AbCellera's General Counsel. In response to those letters, Berkeley Lights only listed AbCellera and its General Counsel as its recipient. Lineage was never mentioned in the substance of those letters, and there is nothing in the record to infer Lineage participated in the drafting of them. The

brief appearance of Lineage's name on a single envelope is not enough to create a contact with California. But even assuming Lineage helped draft the letter, as explained above, "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." *Inamed*, 249 F.3d at 1361. Moreover, Berkeley Lights has not shown that Lineage "'engaged in 'other activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334 (emphasis in original). All the other activities discussed above only relate to AbCellera, but in no way implicate Lineage in those activities. Thus, the record does not support an exercise of specific jurisdiction over Lineage.

The Court likewise concludes Lineage has insufficient contacts to justify exercising general jurisdiction. Lineage is incorporated in Delaware and headquartered in Vancouver, British Columbia, Canada. Further, it does not maintain any offices in California. And finally, again even assuming Lineage helped in drafting the letters, they were but a seldom occurrence.

Accordingly, the Court concludes that it cannot exercise personal jurisdiction over Lineage.

D. **LIMITED JURISDICTIONAL DISCOVERY IS WARRANTED.**

Given the Court has determined it cannot exercise personal jurisdiction over AbCellera and Lineage, Berkeley Lights requests that it be given an opportunity for jurisdictional discovery. Specifically, it seeks additional discovery "regarding AbCellera's relationship with Lineage, Defendant's agreements with California companies, and Defendants' business activities in California." (Opp. at 7.) AbCellera and Lineage argue jurisdictional discovery is unwarranted because none of the information Berkeley Lights seeks relates to the letters.

The Federal Circuit applies Ninth Circuit law to determine whether to permit jurisdictional discovery. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010). The Ninth Circuit requires that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 1235 (quoting *Laub v. United States Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir.1986)). A plaintiff is not entitled to obtain jurisdictional discovery, however,

13

"when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction, or where the request for discovery is based on little more than a hunch that it might yield jurisdictionally relevant facts." *Id.* at 1235–36 (cleaned up).

Regarding AbCellera's relationship with Lineage, the Court does not see how, and Berkeley Lights does not explain, additional discovery on this issue would cure any jurisdictional issues discussed above. Therefore, the Court finds additional discovery related to AbCellera's relationship with Lineage is unnecessary. The Court does find that additional discovery as it relates to AbCellera's business dealings in California is sensible. As pled, the FAC fails to describe whether AbCellera's business deals with those four California companies or purported licensing agreements with Stanford provide for the enforcement of the '839 Patent, which is paramount to the second and third factors of the specific jurisdiction analysis. The same is not true for Lineage. Berkeley Light's own allegations show that these agreements were solely between AbCellera and the companies.

Accordingly, the Court believes limited jurisdictional discovery is warranted in this case.

## CONCLUSION

For the above reasons, the Court GRANTS AbCellera's and Lineage's motion to dismiss for lack of personal jurisdiction. The Court also GRANTS, IN PART, Berkeley Lights request to conduct limited jurisdictional discovery consistent with the above discussion to be completed by no later than April 23, 2021. Moreover, the Court HEREBY REFERS this matter to a randomly assigned Magistrate Judge for purposes of supervising this jurisdictional discovery, including the scope of the discovery and any disputes that arise between the parties.

**IT IS SO ORDERED.**

Dated: 1/29/21

JEFFREY S. WHITE
United States District Judge